# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHESTER O'QUINN, # K-92939,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00407-JPG** |
| | ) | |
| **CHAPMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

This matter is before the Court for case management.  It represents one of six cases[1] that was severed from *O'Quinn v. Gaetz, et al.*, Case No. 13-cv-01342-JPG ("original case") pursuant to a Memorandum and Order entered in the original case on April 1, 2014 (Doc. 1 in the instant case).  This case involves an Eighth Amendment claim against Defendant Chapman, who served as Plaintiff's dentist at Menard Correctional Center ("Menard") and Pinckneyville Correctional Center ("Pinckneyville"), for allegedly failing to provide Plaintiff with adequate dental care in 2013-14.  Plaintiff was directed to notify the Court by May 6, 2014, if he did *not* wish to proceed with this severed action.  The deadline has now passed.

Plaintiff filed a motion for leave to amend complaint on April 30, 2014 (Doc. 10).  He was not required to do so in this action.[2]  However, this lawsuit is still in its infancy.

---

[1] The other five cases are *O'Quinn v. Peek*, No. 14-cv-404-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014); *O'Quinn v. Shicker, et al.*, No. 14-cv-405-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014); *O'Quinn v. Stewart, et al.*, No. 14-cv-406-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014); *O'Quinn v. Rensing, et al.*, No. 14-cv-408-JPG (S.D. Ill., filed April 2, 2014), and; *O'Quinn v. Markel*, No. 14-cv-409-JPG (S.D. Ill. April 2, 2014) (voluntarily dismissed May 27, 2014).

[2] The Court did order Plaintiff to file a properly amended complaint in order to proceed in the following four severed actions, which have since been voluntarily dismissed: *O'Quinn v. Peek*, No. 14-cv-404-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014); *O'Quinn v. Shicker, et al.*, No. 14-

No parties have been served, and no answers have been filed.   Under these circumstances, Plaintiff's motion for leave to file an amended complaint shall be **GRANTED**.   In light of the fact that Plaintiff previously filed a complaint and a first amended complaint in the original action, the Clerk shall be directed to file the proposed pleading as the "Second Amended Complaint."

## Second Amended Complaint

Plaintiff filed the Second Amended Complaint pursuant to 42 U.S.C. § 1983.   In the proposed pleading, Plaintiff provides additional factual support for his claims against Defendant Chapman.   The two have a history together (p. 5).   Defendant Chapman served as Plaintiff's dentist at Menard and Pinckneyville.   Plaintiff's complaints about his dental care fall into three general categories.

First, Plaintiff complains that Pinckneyville's dental services are slower than Menard's. Plaintiff alleges that he did not meet with Defendant Chapman until thirty-eight days after his transfer to Pinckneyville (p. 5).   He arrived at Pinckneyville on May 1, 2013, and met with Defendant Chapman for the first time on June 9, 2013.   At this appointment, Defendant Chapman told Plaintiff that there is a 10-12 month waiting list for fillings and cleanings at Pinckneyville; Dr. Chapman filled Plaintiff's cavities within thirty days at Menard.   Both prisons have a 12-month waiting list for cleanings.   Plaintiff generally complains that Pinckneyville's slower dental services violate his Eighth Amendment rights.

Second, Plaintiff alleges that Defendant Chapman recommended extraction of a tooth that could have been saved.   At Plaintiff's initial dental appointment on June 9, 2013, Defendant Chapman identified two of Plaintiff's teeth that would likely require extraction.   When Plaintiff

cv-405-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014); *O'Quinn v. Stewart, et al.*, No. 14-cv-406-JPG (S.D. Ill., filed April 2, 2014) (voluntarily dismissed May 27, 2014), and; *O'Quinn v. Markel*, No. 14-cv-409-JPG (S.D. Ill. April 2, 2014) (voluntarily dismissed May 27, 2014).

asked if the teeth could be saved, Defendant Chapman said, "I been wanting to have that wisdom tooth removed and the other one I don't think a filling will work for it (sic)" (p. 5). Defendant Chapman did not schedule Plaintiff for oral surgery at that time because Plaintiff stated that he was in no pain and complained of no other symptoms.

Plaintiff returned to Defendant Chapman five or six months later complaining of facial swelling, headaches, halitosis, and ringing in his ears.  Defendant Chapman referred Plaintiff to an oral surgeon for extraction of the two teeth.  When Plaintiff asked the oral surgeon whether his two teeth could be saved, the provider stated that one could, and the other one could not. However, the outside provider went on to state that IDOC would not pay to save a tooth because extraction was less expensive.   Plaintiff's two teeth were extracted in December 2013. Plaintiff challenges the decision to extract, rather than save, the second tooth.

Finally, Plaintiff claims that Defendant Chapman provided Plaintiff with inadequate post-operative care following his December 2013 surgery (p. 6).  Plaintiff returned from surgery with orders for a follow-up appointment and a soft diet.  Defendant Chapman met with Plaintiff, examined him, and gave him pain medication.  Defendant Chapman also indicated that he would follow up with Plaintiff again two or three weeks later.  He did not.

Plaintiff claims that he never received a soft diet and "went hungry for 18 days" (p. 6). Plaintiff had stitches in his mouth and was in great pain.  When Plaintiff ran out of pain medication one week after the operation, he had to get more from the health care unit and not Defendant Chapman.  When the second supply of pain medication ran out two weeks after the operation, Plaintiff could not get more.  His bleeding did not stop until eighteen days after surgery.  He suffered from facial swelling, headaches, earaches, and halitosis, which persisted. In the complaint, he requests mouthwash, hydrogen peroxide, and salt packs.  In his request for

relief, Plaintiff seeks a preliminary and permanent injunction requiring fillings, antibiotics, pain medication, and regular cleanings going forward.

In addition to Defendant Chapman, Plaintiff names several other defendants in the Second Amended Complaint.  These defendants include S. A. Godinez (Illinois Department of Corrections ("IDOC") director), Louis Shicker (IDOC medical director), Roderick Matticks (regional medical director), Thomas Spiller (Pinckneyville's warden), and Donald Gaetz (Pinckneyville's former warden).  Plaintiff seeks injunctive relief and monetary damages (p. 6).

**Discussion**

The Second Amended Complaint is now subject to review pursuant to 28 U.S.C. § 1915A(a).  Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

After carefully reviewing the Second Amended Complaint, the Court finds that it states a colorable claim against Defendant Chapman under the Eighth Amendment for the denial of dental care (**Count 1**).  However, further discussion of this claim is in order under the circumstances presented.  The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment.  *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010).  Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).  To establish

4

liability, a prisoner must show that the: (1) medical condition was objectively serious, and (2) state officials acted with deliberate indifference to the prisoner's health or safety, which is a subjective standard. *Farmer*, 511 U.S. at 834; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

With regard to the objective component of this analysis, the Seventh Circuit has indicated that a dental condition may constitute a serious medical need. *Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005). In fact, according to the Seventh Circuit, "dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (citation omitted). Examples of "objectively serious" dental needs involve circumstances in which the failure to treat a dental condition causes an inmate to suffer an array of problems, such as headaches, extreme pain, bleeding, infected gums, and problems eating. *Id.* at 593 (citations omitted). The allegations in the complaint suggest that Plaintiff's dental condition was objectively serious during the past year, resulting in the extraction of two teeth.

With regard to the subjective component of the analysis, the complaint must "demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This state of mind is deliberate indifference. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). Plaintiff is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it." *Greeno*, 414 F.3d at 653. "Neither medical malpractice nor mere disagreement with a

doctor's medical judgment" is sufficient to establish deliberate indifference in violation of the Eighth Amendment.  *Berry*, 604 F.3d at 441 (citing *Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)).  However, a prisoner is also "not required to show that he was literally ignored."  *Id.* at 441 (citing *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

The deliberate indifference prong presents far more problems for Plaintiff.  With regard to his general complaint about delays in dental care, Plaintiff cites few examples of delays in his own care.  Although he complains that his initial consultation with Defendant Chapman did not occur for thirty-eight days after his transfer to Pinckneyville, he admits that he was a continuing patient of Defendant Chapman and was not having symptoms on June 9, 2013.  When Plaintiff complained of swelling and dental pain five or six months later, he was referred to an oral surgeon without any delay alleged.  Plaintiff complained of delays in his post-operative care, but admits that Defendant Chapman examined him upon his return from surgery and gave him pain medication.  And although Plaintiff was unable to obtain a second round of pain medication from Defendant Chapman, he received it upon request—and without delay—from Pinckneyville's other medical providers.  The fact that they refused Plaintiff's request for a third round of pain medication may be more closely associated with its addictive properties than deliberate indifference to Plaintiff's dental needs or any intentional delay in his care.

Plaintiff's second complaint regarding the tendency to recommend extraction of teeth, in lieu of fillings, is even more tenuous.  The complaint quotes Defendant Chapman in June 2013 as stating, "I been wanting to have that wisdom tooth removed and the other one I don't think a filling will work for it (sic)" (p. 5).  The fact that Defendant Chapman then waited five or six months to actually recommend extraction—and only after Plaintiff complained of additional

6

symptoms of swelling and dental pain—suggests that he used thoughtful consideration, not deliberate indifference, in making the recommendation to extract both teeth.

Plaintiff's third complaint regarding post-operative care most concerns the Court. The Second Amended Complaint suggests that Defendant Chapman met with Plaintiff only once after his surgery in December 2013, despite Plaintiff's repeated requests for a follow-up appointment and continuing symptoms of bleeding, swelling, and pain.  In light of these allegations, the Court will allow Plaintiff to proceed with **Count 1** against Defendant Chapman. Further, the Court, though clearly skeptical about Plaintiff's first two complaints regarding the delays in treatment and tendency to extract teeth, will not limit Plaintiff to the post-operative care claim; he shall be allowed to proceed on all three grounds at this juncture.  The Court will also allow Plaintiff to proceed with **Count 1** against Pinckneyville's warden, Defendant Spiller, in his official capacity, based solely on Plaintiff's request for injunctive relief.

However, **Count 1** shall be dismissed against all remaining defendants, including Defendants Godinez, Shicker, Matticks, Spiller (in his individual capacity), and Gaetz. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  As a result, the doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983.  *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). The Second Amended Complaint sets forth no allegations suggesting that any of these defendants personally participated in violating Plaintiff's Eighth Amendment rights. Accordingly, **Count 1** shall be dismissed against Defendants Godinez, Shicker, Matticks, Spiller (in his individual capacity), and Gaetz without prejudice.

7

**Request for Preliminary Injunction**

In the opening paragraph of his statement of claim, Plaintiff seeks a preliminary and permanent injunction "to prevent further suffering, harm, injury, and loss of teeth.  To wit: Any action the court may deem something needs to done right away on or to" (p. 5).  In his request for relief, Plaintiff seeks an order requiring Defendant Chapman to "right away" clean his teeth, fill his cavities, and provide him with pain medication and antibiotics (p. 6).  He requests regular cleanings thereafter every 6-12 months.  While the Court will save for another day the issue of whether a permanent injunction is appropriate, Plaintiff's request for a preliminary injunction is addressed herein and is **DENIED**.

In order to obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction.  *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007).  If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction.  *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff's request does not satisfy this standard.  He appears to be making a general request for more regular dental care.  The Court considers a preliminary injunction to be a drastic remedy requiring some showing of impending irreparable harm.  If Plaintiff is facing this type of harm, he must clearly identify it, the steps he has taken to address it at the prison and/or with Defendant Chapman, and the responses he has received to his requests for treatment.  The Court notes that Plaintiff seeks antibiotics and pain medication.  However, the Court also notes that

Plaintiff admits in the amended pleading in this and another pending case that he was freely given both, upon request, by his other health care providers earlier this year.  *See O'Quinn v. Rensing, et al.*, No. 14-cv-408-JPG.[3]  It is unclear whether he has turned to these providers for medical attention (and been denied) before turning to the Court.

Because the contours of Plaintiff's request are unclear, the request for preliminary injunctive relief is denied.  However, the denial is without prejudice to Plaintiff renewing the request should it become necessary to do so in the regular course of litigation.

## Pending Motions

Plaintiff has filed a motion for leave to proceed *in forma pauperis* (Doc. 3), which shall be addressed in a separate Order of this Court.

Plaintiff has also filed a motion to update exhibits (Doc. 6), in which he seeks to supplement his amended complaint with a 200-page exhibit.  Plaintiff filed the motion seven days before Plaintiff filed his proposed Second Amended Complaint, and it is unclear whether Plaintiff actually intended the 200-page exhibit to be filed along with his First or Second Amended Complaint.  Regardless, the request shall be denied.  At the preliminary review stage of the litigation, voluminous exhibits are unnecessary.  *See* FED. R. CIV. P. 26-37.  Federal Rule of Civil Procedure 8(a)(2) directs that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Further, Rule 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct."  Plaintiff's request to submit 200 pages of exhibits is unreasonable in light of Rule 8.  In addition, review of the proposed exhibit reveals that much of it is clearly unrelated to Plaintiff's claims in this case.

---

[3] In a proposed amended complaint that he filed in another case, *O'Quinn v. Rensing, et al.*, No. 14-cv-408-JPG (S.D. Ill., filed April 2, 2014), Plaintiff states, "There was an outbreak of something during January, 2014, in the housing unit at that time and they quarantined it for weeks.  I broke out with a rash at that time and it took them several weeks before they (Health Care Unit) (Dr. Shah) gave me antibiotics this time."

Plaintiff's motion to amend/correct (Doc. 10) is **GRANTED**.

**<u>Disposition</u>**

The **CLERK** is hereby **DIRECTED** to file the proposed pleading as the "Second Amended Complaint."  Further, the **CLERK** is **DIRECTED** to add Defendant **THOMAS SPILLER**, in his official capacity only, as a party to this action based on Plaintiff's request for injunctive relief.

**IT IS HEREBY ORDERED** that Defendants **GODINEZ, SHICKER, MATTICKS,** and **GAETZ** are hereby **DISMISSED** without prejudice from this action.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **CHAPMAN** and **SPILLER** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Memorandum and Order (Doc. 1), the Second Amended Complaint, and this Memorandum and Order to the Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

        **IT IS SO ORDERED.**

        **DATED: June 9, 2014**

                             *s/ J. Phil Gilbert*
                             United States District Judge